UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRAS DJELASSI,

                Petitioner,

    v.

ICE FIELD OFFICE DIRECTOR,

                Respondent.

Case No. C19-491-RSM-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, who has been detained at the Northwest Detention Center in Tacoma, Washington, since May 21, 2018, brings this 28 U.S.C. § 2241 immigration habeas action to obtain release or a bond hearing. Although he initiated this action *pro se*, the Court has appointed the Office of the Federal Public Defender to represent him. Currently before the Court is the Government's motion to dismiss, which asserts that Petitioner is lawfully detained and not entitled to a bond hearing. (Dkt. # 7.) Petitioner opposes dismissal. (Dkt. # 17.) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the motion to dismiss be DENIED, Petitioner's habeas petition be GRANTED, and the Government be ordered to provide Petitioner with a bond hearing as explained below.

## II.  BACKGROUND

Petitioner is a native and citizen of Tunisia. (Dkt. # 7 at 21.) He came to the United States to board a cruise ship where he had obtained employment as a card dealer. (*Id.* at 30, 43.) In July 2017, he was temporarily admitted into the United States at the Sea-Tac International Airport as a crewman on a vessel (C-1 visa). (*Id.* at 67.) He then flew to Juno, Alaska, where he boarded the cruise ship. (*Id.* at 43.) He worked on the ship for several months but was fired in September 2017. (*Id.* at 27, 43, 72, 74.) He was served a Notice to Detain, Remove, or Present Alien (Form I-259), which provides for the removal of a noncitizen crewman on a vessel other than the one on which he arrived, if removal on that vessel is impracticable. (*Id.* at 22, 69; *see* 8 U.S.C. § 1284(c); 8 C.F.R. §§ 253.1, 253.2(b).) U.S. Customs and Border Patrol paroled Petitioner into the United States so he could be taken to the Los Angeles airport for return to Tunisia. (Dkt. # 7 at 22, 69.) During his transport, he escaped the security detail and absconded. (*Id.* at 22, 43, 69.)

In February 2018, Petitioner filed an application for asylum (Form I-589) with U.S. Citizenship and Immigration Services ("USCIS"), expressing a fear of returning to Tunisia. (*Id.* at 22, 27-44, 69.) USCIS determined that it did not have jurisdiction to consider Petitioner's application and referred his application to an immigration judge ("IJ"). (*Id.* at 22; *see* 8 C.F.R. § 208.2(c).) On May 21, 2018, Petitioner was issued a Notice of Referral to an IJ in accordance with 8 C.F.R. § 208.2(c), as a "[c]rewmember/violator." (Dkt. # 7 at 24-25.) Following a merits hearing on August 8, 2018, the IJ denied his application and ordered him removed to Tunisia. (*Id.* at 46-56.) On January 7, 2019, the Board of Immigration Appeals ("BIA") dismissed his appeal. (*Id.* at 58-63.) Petitioner timely filed a petition for review and a motion to stay his removal with the Ninth Circuit. *See Djelassi v. Barr*, No. 19-70184, Dkt. 1 (9th Cir. Jan. 17,

2019). The Ninth Circuit temporarily stayed his removal and then granted the motion to stay pending adjudication of his petition for review. *Id.*, Dkt. 8 (May 31, 2019).

Petitioner has been detained since May 21, 2018. (Dkt. # 7 at 68.) On February 7, 2019, he appeared for a bond hearing, but the IJ determined she lacked jurisdiction to grant bond. (*Id.* at 65.) Petitioner did not appeal this decision to the BIA. On March 26, 2019, the U.S. Department of Homeland Security ("DHS") conducted a Post-Order Custody Review ("POCR") and denied release because Petitioner had "demonstrated a complete disregard for the immigration laws of the United States" and was considered a flight risk whose "release from custody would not be in the public interest." (*Id.* at 68-76.)

Petitioner initiated the instant action on April 3, 2019. (Dkt. # 1.)

### III.    DISCUSSION

The Government argues that this action should be dismissed because Petitioner is subject to mandatory detention as an arriving noncitizen under 8 U.S.C. § 1225(b) and due process does not entitle him to a bond hearing. In response, Petitioner argues that although he was initially detained under § 1225(b), he is now detained under § 1226(a), which provides for a bond hearing. Alternatively, Petitioner asserts that he is entitled to a bond hearing under the Due Process Clause. As discussed below, the Court concludes that § 1225(b)(1) governs Petitioner's detention and that due process requires he be afforded a bond hearing at which the Government must bear the burden of justifying his continued detention by clear and convincing evidence.

**A. Statutory Framework for Immigration Detention**

Three statutes govern immigration detention. *See* 8 U.S.C. §§ 1225, 1226, 1231. Although only two are at issue here, §§ 1225 and 1226, the Court briefly discusses each to provide context for the discussion below.

REPORT AND RECOMMENDATION - 3

Section 1225 applies to "applicants for admission"—noncitizens who "arrive[] in the United States," or are "present" in the United States but have "not been admitted." 8 U.S.C. § 1225(a)(1).[1] There are two categories of applicants for admission, those who fall under § 1225(b)(1) and those who fall under § 1225(b)(2). The parties agree that, at least initially, Petitioner fell under § 1225(b)(1), which applies to, among others, noncitizens initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation. *See Jennings v. Rodriguez*, 138 S. Ct. 803, 837 (2018) (citing § 1225(b)(1)(A)(i)). Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order. 8 U.S.C. § 1225(b)(1)(A)(i). If, however, a § 1225(b)(1) noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," the inspecting immigration officer must refer the noncitizen for an interview with an asylum officer. 8 U.S.C. § 1225(b)(1)(A)(ii); 8 C.F.R. § 208.30(d). If the asylum officer determines that the noncitizen has a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Under the statute, the only opportunity for a noncitizen to be released pending a decision on the asylum application is temporary parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); *see also* 8 C.F.R. §§ 212.5(b), 235.3. The statute does not impose "any limit on the length of detention" pending a decision on the asylum application and does not authorize bond hearings or release on bond. *Jennings*, 138 S. Ct. at 842-45.

---

[1] Applicants for admission are also referred to as "arriving" noncitizens. 8 C.F.R. § 1001.1 ("Arriving [noncitizen] means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or [a noncitizen] seeking transit through the United States at a port-of-entry[.]").

REPORT AND RECOMMENDATION - 4

Section 1226 provides the framework for the arrest, detention, and release of noncitizens who are in removal proceedings. Section 1226(a) grants DHS the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory until removal proceedings have concluded.[2] 8 U.S.C. § 1226; *Jennings*, 138 S. Ct. at 846-48. When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. *See* 8 C.F.R. § 236.1(c)(8). After the initial custody determination, the detainee may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination. 8 C.F.R. § 1003.19(e).

Section 1231 governs the detention and release of noncitizens who have been ordered removed. During the "removal period," which typically lasts 90 days, detention is mandatory. 8 U.S.C. § 1231(a)(2). The removal period is triggered by the latest of the following: (1) the date the order of removal becomes administratively final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order; or (3) if the noncitizen is detained or confined (except under an immigration process), the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). If ICE is unable to remove the noncitizen during the removal period, DHS may continue to detain certain

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1   noncitizens specified in the statute or release them under an order of supervision. 8 U.S.C. §

2   1231(a)(6). Section 1231(a)(6), however, does not authorize indefinite detention. *Zadvydas v.*

3   *Davis*, 533 U.S. 678, 701 (2001). In addition, the Ninth Circuit has held that noncitizens subject

4   to prolonged detention under § 1231(a)(6) are entitled to a bond hearing. *Diouf v. Napolitano*

5   ("*Diouf II*"), 634 F.3d 1081, 1082 (9th Cir. 2011).

6       To summarize, §§ 1225(b) and 1226(c) mandate detention without a bond hearing until

7   removal proceedings have concluded, even if the detention becomes prolonged. *Jennings*, 138 S.

8   Ct. at 842, 847. Section 1226(a) permits prolonged detention while removal proceedings are

9   pending but gives noncitizens the opportunity to request a bond hearing. Section 1231(a) requires

10  detention during the removal period but authorizes DHS to release certain noncitizens after the

11  removal period; noncitizens detained for a prolonged period under § 1231(a)(6) are entitled to a

12  bond hearing in the Ninth Circuit and cannot be held indefinitely.

13      **B.  Statutory Basis for Petitioner's Detention**

14      As noted above, the parties do not dispute that Petitioner was initially detained under §

15  1252(b)(1). Petitioner argues, however, that because his administrative proceedings have

16  concluded and he is subject to a Ninth Circuit stay of removal while his petition for review is

17  under consideration, his detention is now governed by § 1226(a).

18      Petitioner relies on *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942

19  (9th Cir. 2008), which, he argues, remains good law after the Supreme Court's recent decision in

20  *Jennings*. *Casas-Castrillon* involved a legal permanent resident who had been detained for seven

21  years without an opportunity to contest his detention before an IJ. At the time he filed his habeas

22  petition, his administrative proceedings had concluded and he was awaiting the Ninth Circuit's

23  decision on his timely filed petition for review of his final removal order. The petitioner was

initially subject to mandatory detention under § 1226(c), but both parties agreed that at some point that section no longer governed his detention. The Ninth Circuit rejected the government's argument that § 1231(a) applied, citing *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008) (holding that "when a court of appeals issues a stay of removal pending its decision on [a noncitizen's] petition for review of his removal order, the removal period begins only after the court denies the petition and withdraws the stay of removal"). The court then considered whether § 1226(c) or § 1226(a) applied. The court concluded that § 1226(c)'s mandatory detention provision applied only to expedited removal of criminal noncitizens who are in removal proceedings, and that removal proceedings conclude upon the dismissal of the noncitizen's appeal by the BIA. Because neither § 1231(a) nor § 1231(c) governed the petitioner's detention, the court concluded that § 1226(a) applied. The Ninth Circuit also construed § 1226(a) as requiring a bond hearing at which the petitioner was entitled to release unless the government established by clear and convincing evidence that he was a flight risk or danger to the community.

*Casas-Castrillon* remains binding circuit authority unless it is "clearly irreconcilable" with higher authority. *See In re Amy*, 714 F.3d 1165, 1167 (9th Cir. 2013). Under the "clearly irreconcilable" standard, "it is not enough for there to be some tension between the intervening high authority and prior circuit precedent." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). So long as the court "can apply . . . prior circuit precedent without running afoul of the intervening authority," it must do so. *Id.* (internal quotation marks omitted). The Court concludes that *Casas-Castrillon* is clearly irreconcilable with *Jennings*. First, the Ninth Circuit's determination that § 1226(a)—which authorizes detention "pending a decision on whether the [noncitizen] is to be removed from the United States"—governs the detention of noncitizens

initially detained under § 1226(c) while their petitions for review are pending, is inconsistent with the Supreme Court's interpretation of §§ 1226(a) and 1226(c). Both courts interpreted § 1226(c) as authorizing detention during removal proceedings, but *Casas-Castrillon* identified an earlier termination point for these proceedings than *Jennings*. The Ninth Circuit held that § 1226(c) detention ends upon the dismissal of the noncitizen's appeal by the BIA. *Casas-Castrillon*, 535 F.3d at 948. The Supreme Court, however, explained that "together with § 1226(a), § 1226(c) makes clear that detention of [noncitizens] within its scope *must* continue 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings*, 138 S. Ct. at 846 (quoting § 1226(a), emphasis in *Jennings*). Where a noncitizen filed a petition for review and obtains a stay of removal, the BIA's dismissal of the appeal is not a final decision on whether the noncitizen is to be removed from the United States. *See Prieto-Romero*, 534 F.3d at 1057-59 (decision on whether to remove noncitizen still pending where court of appeals has stayed the noncitizens removal and is considering a petition for review). Thus under *Jennings*, noncitizens initially detained under § 1226(c) remain detained under that statute pending a decision on whether they are to be removed, not pending the conclusion of administrative proceedings. This interpretation is at odds with *Casas-Castrillon*'s holding that detention shifts from § 1226(c) to § 1226(a) when a petition for review is filed.

  Second, the Ninth Circuit's application of the canon of constitutional avoidance to require § 1226(a) bond hearings where the burden is on the government is clearly irreconcilable with *Jennings*'s holding that "there is no justification for any of the procedural requirements that the Court of Appeals layered onto § 1226(a) without any arguable statutory foundation." 138 S. Ct. at 842; *see also id.* at 847 ("Nothing in § 1226(a)'s text—which says only that the Attorney General 'may release' the [noncitizen] 'on . . . bond'—even remotely supports the imposition of

[periodic bond hearings at which the Attorney General must prove by clear and convincing evidence that continued detention is justified]."). For these reasons, *Casas-Castrillon* is no longer binding authority following *Jennings*.

Petitioner nevertheless maintains that even under *Jennings*, he is not detained pursuant to § 1225(b)(1). In *Jennings*, the Supreme Court explained:

> Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) [noncitizens] are detained for "further consideration of the application for asylum," and § 1225(b)(2) [noncitizens] are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

138 S. Ct. at 842. The Supreme Court further determined that the "plain meaning" of § 1225(b)(1)(B)(ii) is that "detention must continue until immigration officers have finished 'consider[ing]' the application for asylum." *Id.* at 844 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii), alteration in *Jennings*). Petitioner seizes on this language to argue that because his case is pending before the Ninth Circuit, immigration officers have finished considering his application for asylum and his detention is now governed by § 1226(a).[3]

While Petitioner's argument has some appeal at first glance, it is not consistent with *Jennings* as a whole. The respondents in *Jennings* asserted that § 1225(b)(1) mandates detention only until the start of applicable proceedings—rather than all the way through their conclusion—at which time detention authority shifts from § 1225(b)(1) to § 1226(a). *Id.* at 845. The Supreme Court rejected this argument, in part based on "the context of the statutory scheme as a whole." *Id.* As the Supreme Court explained, § 1226(a) authorizes detention only "[o]n a warrant issued" by the Attorney General leading to the noncitizen's arrest, whereas § 1225(b) permits detention

---

[3] Petitioner does not cite any cases that support his position, and the Court has not found any that are analogous.

without a warrant at the border. *Id.* Under the respondents' interpretation of the statutes, the Supreme Court reasoned, the Attorney General would have to issue an arrest warrant to continue detaining an arriving noncitizen once removal proceedings began, which made "little sense." *Id.* For the same reason, it would make little sense to conclude that detention authority for arriving noncitizens shifts from § 1225(b)(1) to § 1226(a) once the noncitizen files a petition for review in the court of appeals. Rather, a more reasonable interpretation of § 1225(b)(1), as construed by *Jennings*, is that the applicable proceedings—"further consideration of the application for asylum"—conclude after both administrative and judicial proceedings are finalized. Given this reading of the statute and *Jennings*, the Court concludes that Petitioner remains detained under § 1225(b)(1) and is not statutorily entitled to a bond hearing.

**C. Due Process**

The parties dispute whether due process requires Petitioner to receive a bond hearing before an IJ and if so, which standards apply. The Government argues that the Court should defer to the political branches' authority to control the country's borders and hold that Petitioner is only entitled to the process provided by Congress, specifically the opportunity to seek temporary release on parole under 8 U.S.C. § 1182(d)(5)(A). The Government also contends that the Court should not upset Congress's detailed statutory scheme, which does not provide for bond hearings for § 1225(b)(1) detainees. If the Court orders a bond hearing for Petitioner, the Government maintains that Petition should bear the burden of justifying his release.

Petitioner responds that even though he is an arriving noncitizen, his 18-month detention without a bond hearing is unconstitutional. He asserts he was entitled to a bond hearing after six months in detention. Alternatively, if the Court applies a "reasonableness" test, he contends that his detention is unreasonably prolonged such that a bond hearing is required. Finally, Petitioner

argues that the procedural protections established in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), should apply to his bond hearing, namely that the Government should bear the burden of justifying his continued detention by clear and convincing evidence.

The Honorable James L. Robart recently adopted the Honorable Mary Alice Theiler's recommended finding that "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). Judge Robart also adopted the case-specific analysis Judge Theiler employed to determine whether prolonged mandatory detention violates due process in a particular case. *Id.*; *see also id.* at 1117 (Theiler R & R rejecting request to adopt bright-line rule that detention becomes unreasonably prolonged at six months). That analysis requires consideration of the following factors: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id.* at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)). Finally, Judge Robart agreed with Judge Theiler that where due process requires a bond hearing, the government must provide clear and convincing evidence to justify the noncitizen's continued detention. *Id.* at 1107. The Court fully agrees with Judge Robart's and Judge Theiler's carefully reasoned decisions in *Banda* and will apply their analysis here.

Before doing so, however, the Court addresses the only significant argument the Government raises that *Banda* did not address. The Government posits that the Supreme Court's decision in *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), precludes the Court from granting Petitioner a bond hearing. In *Mezei*, the Supreme Court held that a noncitizen who

REPORT AND RECOMMENDATION - 11

had lived in the United States for about 25 years but left the country for 19 months was not entitled to due process in assessing his right to admission upon his return. *Id.* at 208-16. Although Mezei had previously resided in the United States, he was "permanently excluded from the United States on security grounds" and "stranded in his temporary haven on Ellis Island because other countries [would] not take him back." *Id.* at 207. The Supreme Court ultimately held that Mezei's detention without a hearing at the border was lawful. *Id.* at 212 ("Whatever the procedure authorized by Congress is, it is due process as far as [a noncitizen] denied entry is concerned." (quoted source omitted)).

The Court, however, finds that *Mezei* does not apply here.[4] As other courts have reasoned, Mezei had already been permanently excluded from the United States prior to filing his habeas petition, and therefore he had no right to further proceedings to determine whether he could remain in the country. *See Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018). In contrast to Mezei, who sought a hearing so he could be temporarily admitted into the United States on bond until arrangements were made for his departure abroad, Petitioner seeks a bond hearing prior to a final decision on his asylum application. *See id.* (citing *Jennings*, 138 S. Ct. at 868 (Breyer, J., dissenting) ("Mezei . . . was in a sense in the position of a convicted criminal who had lost his appeal, not a criminal awaiting trial . . . .")). In addition, the Supreme Court in *Mezei* "explicitly tailored its holding to the national security context . . . ." *Id.*; *see also Kouadio v. Decker*, 352 F. Supp. 3d 235, 240 (S.D.N.Y. 2018) (collecting cases recognizing *Mezei* was limited to the national security context in which it was decided). Thus while "*Mezei* may compel the conclusion that arriving [noncitizens] already excluded on national security grounds are not entitled to a bond hearing prior to their arranged deportation," it "does not compel the categorical

---

[4] Not all courts have reached this conclusion. *See, e.g.*, *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y. 2018). However, they appear to be in the minority.

conclusion that all arriving [noncitizens] may be subject to prolonged confinement without a bond hearing." *Lett*, 346 F. Supp. 3d at 386; *see also Kouadio*, 352 F. Supp. 3d at 241 (finding that generalized national security interest was "insufficient to trigger reduction of due process protections recognized in *Mezei*" and ordering a bond hearing for a § 1225(b)(1) detainee).

**D. Bond Hearing**

To reiterate, whether Petitioner's detention is unreasonably prolonged such that he is entitled to a bond hearing requires consideration of "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1106 (quoting *Jamal*, 358 F. Supp. 3d at 858-59). The Court discusses each factor below.

The length of detention is "the most important factor." *Id.* at 1118. Petitioner has been in detention for 18 months, which is a very long time. *See id.* (granting bond hearing after 17 months detention and collecting cases granting bond hearings after nine, 10, 16, and 19 months detention). The first factor strongly favors granting Petitioner a bond hearing.

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Id.* at 1119 (quoting *Jamal*, 358 F. Supp. 3d at 859). Petitioner's petition for review has been pending since January 17, 2019, and briefing should be completed by the end of the year. It may take up to another year, or longer, for the Ninth Circuit to resolve the case. *See id.* (petition for review process may take up to two years or longer). This factor favors granting Petitioner a bond hearing, as well.

REPORT AND RECOMMENDATION - 13

The third factor—conditions of the detention facility where Petitioner is detained—is neutral because the parties have not submitted any evidence regarding the conditions at the Northwest Detention Center. *See id.* (reaching same conclusion given analogous facts).

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. *See id.* at 1119-20. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (quoted source omitted, citing *Hernandez v. Decker*, No. 18-5026, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018) ("[T]he mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in opposition.")).[5] Courts, however, should be "sensitive to the possibility that dilatory tactics by the removable [noncitizen] may serve not only to put off the final day of deportation, but also to compel a determination that the [noncitizen] must be released because of the length of his incarceration." *Id.* (quoted source omitted). With respect to the government, "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable. . . . Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 18-2447, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018).

---

[5] *Martinez* involved mandatory prolonged detention under § 1226(c). Analysis of the fourth and fifth factors are the same for purposes of considering whether detention is unreasonably prolonged under § 1226(c) and § 1225(b)(1).

Petitioner was detained on May 21, 2018, had a master calendar hearing before an IJ on May 31, 2018, and appeared for his merits hearing on August 8, 2018. Petitioner timely appealed to the BIA, which rendered its decision approximately five months later. Petitioner timely filed a petition for review in the Ninth Circuit and has requested only a one-month extension of time. Based on this record, there is no evidence Petitioner has engaged in dilatory tactics, and therefore the fourth factor weighs in his favor.

Likewise, there is no evidence the Government has engaged in deliberate delay tactics. Most of the delay appears to have stemmed from the BIA's and Ninth Circuit's crowded dockets. "Although not the result of intentional action on behalf of government officials, this delay is attributable to the Government." *Martinez*, 2019 WL 5968089, at *10 (citing *Sajous*, 2018 WL 2357266, at *11 ("the operative question should be whether the [noncitizen] has been the cause of the delayed immigration proceeding and, where the fault is attributable to some entity other than the [noncitizen], the factor will weigh in favor of concluding that continued detention without a bond hearing is unreasonable"); *Durkay v. Decker*, No. 18-2898, 2018 WL 5292130, at *4 (S.D.N.Y. Oct. 25, 2018) (weighing delay caused by immigration court in favor of the petitioner)). Accordingly, the fifth factor also favors Petitioner.

The final factor involves consideration of "the likelihood that the final proceedings will culminate in a final order of removal." *Banda*, 385 F. Supp. 3d at 1120 (quoting *Jamal*, 358 F. Supp. 3d at 860). "In other words, the Court considers whether the noncitizen has asserted any defenses to removal." *Id.* Petitioner submitted an asylum application, which the IJ and BIA denied. Petitioner is seeking review by the Ninth Circuit, and the Court does not have sufficient information to determine whether the appeal is nonfrivolous or whether petitioner ultimately will prevail. Accordingly, the Court concludes that this factor is neutral.

In sum, four of the six factors weigh in favor of granting Petitioner a bond hearing, and two of the factors are neutral. Accordingly, Petitioner's removal has become unreasonably prolonged and due process requires that he be granted a bond hearing that complies with *Singh*'s procedural requirements. *See Banda*, 385 F. Supp. 3d at 1120-21.

## IV.     CONCLUSION

The Court recommends that the Government's motion to dismiss (Dkt. # 7) be DENIED, Petitioner's habeas petition be GRANTED, and the Government be ordered to provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), within 30 days of the order on this Report and Recommendation. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **December 13, 2019**.

Dated this 27th day of November, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge