UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRAS DJELASSI,

              Petitioner,

v.

ICE FIELD OFFICE DIRECTOR,

              Respondent.

Case No. C19-491-RSM

ORDER ADOPTING R&R AND
GRANTING HABEAS PETITION

## I. INTRODUCTION

The matter comes before the Court on the Report and Recommendation (R&R) of the Honorable Michelle L. Peterson, United States Magistrate Judge. Dkt. #18. Having reviewed the R&R, Respondent's objections thereto, Dkt. #19, Petitioner's response, Dkt. #20, and the remainder of the record, the Court agrees with the recommendation of the R&R to deny Respondent's motion to dismiss and grant Petitioner's habeas petition.

## II. BACKGROUND

The Court adopts and incorporates by reference the factual background set forth in the R&R. Dkt. #18 at 2-3. Petitioner Firas Djelassi is a native and citizen of Tunisia who applied for asylum in February 2018. U.S. Citizenship and Immigration Services ("USCIS") determined it

ORDER ADOPTING R&R AND
GRANTING HABEAS PETITION - 1

lacked jurisdiction and referred his application to an immigration judge ("IJ"). The IJ denied his asylum application and ordered him removed to Tunisia. After Mr. Djelassi appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), the BIA dismissed his appeal. Petitioner timely filed a petition for review and motion to stay his removal, which is currently pending before the Ninth Circuit. *See Djelassi v. Barr*, No. 19-70184 (9th Cir. Jan. 17, 2019). The Ninth Circuit stayed Petitioner's removal pending adjudication of his petition for review.

Petitioner has been detained at the Northwest Detention Center since May 21, 2018. Dkt. #18 at 3. He appeared for a bond hearing on February 7, 2019, but the IJ determined she lacked jurisdiction to grant bond. Dkt. #7 at 65. Petitioner did not appeal the IJ's decision. On March 26, 2019, the U.S. Department of Homeland Security ("DHS") conducted a Post-Order Custody Review and denied release due to Petitioner's "complete disregard for the immigration laws of the United States" and because his "release from custody would not be in the public interest." *Id.* at 68-76.

On April 3, 2019, Petitioner brought this 28 U.S.C. § 2241 immigration habeas action to obtain release or a bond hearing. Dkt. #3. The Government moved to dismiss on the basis that Petitioner is lawfully detained and not entitled to a bond hearing. Dkt. #7. On November 27, 2019, Judge Peterson issued the R&R recommending that the Court deny the Government's motion to dismiss, grant Petitioner's habeas petition, and order the Government to provide Petitioner with a bond hearing within thirty (30) days from the date of this Order. Dkt. #18 at 16. In reaching this conclusion, the R&R found that Petitioner remains detained under 8 U.S.C. § 1225(b)(1) and is not statutorily entitled to a bond hearing, *Id.* at 6-10, but that he is guaranteed a bond hearing under the Due Process Clause of the Fifth Amendment. *Id.* at 10-16.

## III. DISCUSSION

### A. Legal Standard

A district court has jurisdiction to review a Magistrate Judge's report and recommendation on dispositive matters. *See* Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Id*. "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court reviews de novo those portions of the report and recommendation to which specific written objection is made. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

### B. Test to Determine Whether Petitioner's Detention Violates Due Process

To determine whether Petitioner's detention without a bond hearing violates due process, the R&R applied the six-factor test set forth in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019). Dkt. #18 at 13-16. In *Banda*, Judge Robart adopted a six-factor test to determine whether prolonged mandatory detention violates due process in a particular case: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda*, 385 F. Supp. 3d at 1106 (quoting *Jamal A v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)). Here, the R&R found that four of the six *Banda* factors weighed in favor of granting Petitioner a bond hearing and two of the factors were neutral. Dkt. #18 at 16. Accordingly, Judge Peterson concluded that Petitioner's removal was unreasonably prolonged and due process required that he be granted a bond hearing. *Id.* (citing *Banda*, 385 F. Supp. 3d at 1120–21).

The Government objects that the R&R erred in applying the six-part test under *Banda* instead of the three-part test under *Mathews v. Eldridge*, 424 U.S. 319 (1976) to determine whether Petitioner is entitled to a bond hearing. The *Banda* court declined to apply the three-factor *Mathews* test where the petitioner had received no prior bond hearing, on the basis that the *Mathews* test "balances the benefits or burdens of '*additional or substitute* procedural safeguards'" and therefore "does not resolve the more fundamental issue of whether *any* procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106 (quoting *Mathews*, 424 U.S. at 334) (emphasis added)). Under *Mathews*, the court must consider (1) the private interest affected; (2) the government's interest; and (3) the value added by *additional or substitute procedural safeguards* in the situation before the court. *Mathews*, 424 U.S. at 334 (emphasis added). *Banda* reasoned that "[w]hile the *Mathews* factors may be well-suited to determining whether due process requires a second bond hearing, they are not particularly probative of whether prolonged mandatory detention has become unreasonable in a particular case." *Banda*, 385 F. Supp. 3d at 1118.

Here, the Government objects to the R&R's application of *Banda* because Petitioner received a Post-Order Custody Review on March 26, 2019, that assessed whether he was a danger or flight risk. Dkt. #20 at 2. This review was conducted by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. § 1182(d)(5)(A), which authorizes DHS to discretionarily grant parole authority for "urgent humanitarian reasons" or "significant public benefit." *Id.*; *see also* 8 C.F.R. §§ 212.5(b)-(c); 235.3(b)(2)(iii)-(4)(ii) (federal regulations describing factors for appropriateness of parole). Upon review of Petitioner's file and information by ICE's reviewing officials, ICE declined to grant discretionary parole. Dkt. #7 at 67-76. The Government reasons that this prior custody review constitutes "process" that requires application

of *Mathews* instead of *Banda*, since Petitioner was provided an interview and an opportunity to submit documentary evidence. Dkt. #20 at 2.

The Court finds that *Rodriguez v. Robbins* forecloses the Government's argument that a discretionary parole custody review qualifies as past due process afforded to Petitioner. 715 F.3d 1127 (9th Cir. 2013), *abrogated on other grounds sub. nom Jennings v. Rodriguez*, 138 S. Ct. 803 (2018). In *Rodriguez*, the Ninth Circuit concluded that the discretionary parole system available to § 1125(b) detainees does not constitute legitimate due process under the Fifth Amendment to address continued detention. *Id.* at 1144 ("[T]he discretionary parole system available to § 1125(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention."). The Ninth Circuit reached this conclusion because of the different standards of review between bond hearings and discretionary parole reviews and the fact that the parole system "is purely discretionary and its results are unreviewable by IJs." *Id.*

Moreover, nothing in *Banda* supports the Government's proposition that a bond hearing before an IJ constitutes "additional process" if preceded by a discretionary custody review conducted by ICE. On the contrary, *Banda* indicates that "additional process" for § 1125(b) detainees refers to instances where the petitioner has already received a constitutionally sufficient hearing by a neutral decision maker and seeks a second hearing. *See Banda*, 385 F. Supp. 3d at 1118 ("The Court is aware of only one § 1225(b) case that applied the *Mathews* factors, and that case is distinguishable from the instant action because the petitioner had already received . . . a *Rodriguez III* bond hearing and was seeking a second hearing.") (citing *Singh v. Nielsen*, No. 18-2490, 2018 WL 4110549, at *3 (N.D. Cal. Aug. 29, 2018)). Accordingly, Petitioner's prior custody review does not constitute past "process" that requires application of *Mathews*, and the R&R appropriately applied the six *Banda* factors.

| | |
|---|---|
| 1 | Finally, although Petitioner appeared for a bond hearing on February 7, 2019, neither party |
| 2 | has addressed the question of whether Petitioner's prior appearance constitutes past process that |
| 3 | requires application of *Mathews* instead of *Banda*. The R&R noted that the IJ declined to hear |
| 4 | Petitioner's case for lack of jurisdiction, *see* Dkt. #7 at 65, and proceeded with the *Banda* analysis |
| 5 | on the basis that Petitioner has not yet received a constitutionally sufficient bond hearing. Dkt. |
| 6 | #18 at 3. The Government made no objections on this point. *See generally* Dkt. #20. Given that |
| 7 | Petitioner's case for bond was never heard on the merits, the Court finds no basis to disturb the |
| 8 | R&R's finding. |

### C. Petitioner's Constitutional Right to Due Process

The Government also objects that under *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 214 (1953), the Petitioner has no constitutional right to a bond hearing. Dkt. #20 at 5 (arguing that as a noncitizen arriving in the United States, Mr. Djelassi has "no constitutionally protected interest to be free in the United States."). Dkt. #20 at 5. The Government previously raised this argument in its motion to dismiss, reasoning that like the petitioner in *Mezei*, Mr. Djelassi is considered an "arriving alien" with no right to enter the United States and who is subject to removal procedures. Dkt. #7 at 13. The Government argues that Mr. Djelassi has already been afforded more process than the petitioner in *Mezei*, who was denied entry without any notice or opportunity for a hearing. Dkt. #20 at 5.

The Court agrees with the R&R that *Mezei* is inapplicable here. In *Mezei*, the Supreme Court addressed the constitutionality of a multi-year detention on Ellis Island of a legal permanent resident returning from a trip abroad. *Mezei*, 345 U.S. at 214. Before he filed his habeas petition, the *Mezei* petitioner had already been permanently excluded from the United States under emergency regulations promulgated under the Passport Act of 1918. *Id.* at 208. Here, the

Government argues that Mr. Djelassi's pending asylum application does not distinguish him from *Mezei*, given that an IJ and the BIA have already found him ineligible for asylum. Dkt. #20 at 5. However, this finding is currently on appeal before the Ninth Circuit, whereas the petitioner in *Mezei* had no right to further proceedings. *See Mezei*, 345 U.S. at 210–11 (describing powers of Attorney General under Passport Act to permanently exclude petitioner without further review). Based on these distinctions, the R&R—consistent with the majority of district courts—found that *Mezei* is not applicable to this case, where Petitioner seeks a bond hearing while awaiting a final decision on his asylum application. Dkt. #18 at 12 (citing *Lett v. Decker*, 346 F. Supp. 3d 379, 386 (S.D.N.Y. 2018)); *see also Kouadio v. Decker*, 352 F. Supp. 3d 235, 240 (S.D.N.Y. 2018) (collecting cases). Accordingly, this Court agrees with the R&R that *Mezei* is inapposite and does not extinguish Petitioner's constitutional right to a bond hearing.

The Government also invokes *Demore v. Kim*, 538 U.S. 510 (2003) to argue that Petitioner is not entitled to a bond hearing. Dkt. #20 at 3-5. In *Demore*, the Supreme Court denied a legal permanent resident's due process challenge to his continued detention under 8 U.S.C. § 1226(c), which governs detention of noncitizens with criminal histories. *Demore*, 538 U.S. at 510. However, *Demore* limited its holding to "brief" mandatory detention under § 1226(c), which has a "definite termination point" resulting in detention of typically less than five months. *Id.* at 529–30; *see also Rodriguez*, 715 F.3d at 1135 ("*Demore*'s holding hinged on the brevity of mandatory detention . . . ."). Here, Petitioner has been detained nearly one year and eight months from the date of this order. Dkt. #17 at 2. Accordingly, *Demore* is inapposite here and does not limit Petitioner's right to a bond hearing.

**D. The R&R's Application of the *Banda* Factors**

While the Government has framed its objections under the assumption that *Mathews* applies, *see* Dkt. #20 at 6-8, several of its arguments address the R&R's analysis of certain *Banda* factors. First, in analyzing the burden on Petitioner, the Government suggests that Petitioner's period of detention is almost over. Dkt. #20 at 6 (asserting that "a decision on the merits could issue at any time" because petition for review is fully briefed and scheduled for oral argument in April 2020). This objection concerns the second *Banda* factor, which considers how long Petitioner's detention will likely continue. *See Banda*, 385 F. Supp. 3d at 1106. The R&R found that this factor favors granting Petitioner a bond hearing since it may take up to another year, or longer, for the Ninth Circuit to resolve his case. Dkt. #18 at 13. The Court disagrees with the Government's suggestion that oral argument scheduled in April 2020 means that a final decision on Petitioner's asylum claim—and therefore the end of his detention—is imminent. The oral argument date does not guarantee how quickly the Ninth Circuit will issue a ruling, and the Court finds no error in the R&R's assessment that resolution of Petitioner's case may reasonably take another year or longer from the date of this order. *See* Dkt. #18 at 14.

Next, in analyzing the burden on Petitioner, the Government contends that Mr. Djelassi should have sought expedited review by the Ninth Circuit to justify his request for a bond hearing. Dkt. #20 at 7-8. This objection relates to the fourth *Banda* factor regarding delays in removal proceedings caused by the detainee. *See Banda*, 385 F. Supp. 3d at 1106. Under the Government's logic, an asylum applicant's failure to seek expedited review amounts to dilatory behavior that weighs against his right to a bond hearing. The Court finds the Government's argument unavailing. Circuit Rule 27-12 provides that motions to expedite will be granted upon a showing of "good cause," which includes cases involving incarcerated criminal defendants, and situations where irreparable harm may occur or the appeal may become moot. Ninth Cir. Local Rule 27-12.

Nothing in the Government's briefing indicates how Petitioner's case reasonably qualifies for expedited review or why it would be appropriate for him to seek such relief. Instead, the record reflects that delay in this case is a product of the BIA's and Ninth Circuit's "crowded dockets," which courts typically attribute to the Government—not the Petitioner. Dkt. #18 at 15 (citing *Martinez v. Clark*, No. 18-1669, 2019 WL 5968089, at *10 (W.D. Wash. May 23, 2019), *R & R adopted*, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)). Accordingly, the Court agrees with the R&R that Petitioner has not engaged in dilatory tactics, and the fourth factor weighs in his favor.

The Government also objects that Mr. Djelassi's habeas petition has not alleged any error in the Board's decision denying him asylum, nor has he proffered reasons why the Ninth Circuit is likely to grant his petition for review. Dkt. #20 at 5. This argument addresses the sixth *Banda* factor, which considers the likelihood that removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120 (considering "whether the noncitizen has asserted any defenses to removal."). However, Petitioner's briefing explains that the IJ found his testimony credible and indicates that he has challenged the BIA and IJ's conclusion that the Tunisian government is able to control Salafist violence. Dkt. #17 at 2. Without further information, the Court agrees with the R&R that it lacks sufficient information to determine whether an appeal on this issue is non-frivolous or whether Petitioner will likely prevail. *See* Dkt. #18 at 15. Accordingly, the R&R correctly found this factor neutral.

The Government's remaining objections are not relevant under *Banda*. The Government objects that Petitioner has failed to explain why a bond hearing before an immigration judge would lower the chances of him being erroneously deemed a flight risk. Dkt. #20 at 6-7. While "additional process" is one of the factors considered under *Mathews*, this factor is not considered

ORDER ADOPTING R&R AND
GRANTING HABEAS PETITION - 9

under *Banda*. *See* 385 F. Supp. 3d at 1106. Moreover, as discussed above, *Rodriguez v. Robbins* forecloses the Government's argument that discretionary parole review for § 1125(b) detainees constitutes due process. *See* 715 F.3d at 1144. The Government also objects that holding a bond hearing for Petitioner burdens the Government by requiring an IJ to place an additional hearing on their overcrowded docket. Dkt. #20 at 7. However, as the Government concedes, *Banda* does not apply any factors relating to the burden the government would bear if required to provide Petitioner a bond hearing. *Id.* at 3; *see also Banda*, 385 F. Supp. 3d at 1106.

## IV. CONCLUSION

Having reviewed the Report and Recommendation of the Honorable Michelle L. Peterson, United States Magistrate Judge, the Government's objections, Petitioner's response, and the remaining record, the Court finds and ORDERS:

(1) The Court ADOPTS the Report and Recommendation (Dkt. #18).

(2) The Government's motion to dismiss (Dkt. # 7) is DENIED.

(3) Petitioner's habeas petition (Dkt. #3) is GRANTED. Within 30 days of the date of this order, the Government shall provide Petitioner with a bond hearing that complies with the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

(4) The Clerk is directed to send copies of this Order to the parties and to Judge Peterson.

Dated this 17th day of January 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER ADOPTING R&R AND
GRANTING HABEAS PETITION - 10